## No. 11,830.

## CARR, ADMINISTRATOR, *v.* HAYS.

CONTRACT.—*Precedent or Contemporaneous Verbal Agreement.*—A written contract can not be controlled, diminished or enlarged by any precedent or contemporaneous verbal agreement between the parties in relation to the subject-matter.

SAME.—*Deed and Separate Writing Constituting One Contract.*—Where a deed and a written contract are executed concurrently, each being the consideration for the other, they constitute one contract, and become the exclusive evidence of the agreements of the parties concerning the subject-matter thereof.

SAME.—*Merger of Oral Negotiations and Agreements.*—*Pleading.*—All precedent or contemporaneous verbal negotiations and agreements are merged

in a written contract between the parties covering the same subject-matter; and a complaint showing on its face that it is founded on a verbal agreement entered into by the parties preceding or concurrently with the execution of the written contract, is bad.

SAME.—*Presumption that Contract is in Parol.*—Where a pleading counts on a contract which is not alleged to be in writing, it will be presumed to be in parol.

PLEADING.—*Judgment Resting on Bad Paragraph.*—*Reversal.*—Where a judgment rests wholly or in part upon a bad paragraph of complaint which has been held good on demurrer, such judgment will be reversed.

From the White Circuit Court.

*D. Turpie, A. W. Reynolds* and *E. B. Sellers,* for appellant.
*W. F. Hays* and *S. A. Huff,* for appellee.

HOWK, J.—In this case errors are assigned here by appellant, the defendant below, which call in question the overruling (1) of his separate demurrers to each of the first, second and third paragraphs of appellee's claim or complaint, and (2) of his motion for a new trial.

These errors we will consider in the order of their statement, and decide the several questions thereby presented and discussed by appellant's counsel in their brief of this cause.

1. In the first paragraph of his claim or complaint, appellee alleged that, in 1878, Benjamin D. Pettit died intestate, in White county, Indiana, and that, about 1880, appellant Carr became, and since had been, and then was, the sole administrator of such decedent's estate; that, on the 13th day of September, 1876, appellee and his wife conveyed by warranty deed to said Benjamin D. Pettit, then in full life, certain lands, particularly described, in White county, containing 511½ acres, and of the value of $30,000, the consideration expressed in such deed having been, however, only $25,890; that on the day last named, in consideration of the execution and delivery to him of the aforesaid deed, said Benjamin D. Pettit agreed, to and with appellee and his wife, to pay the sum of $21,081 in the aggregate to certain individuals and banking corporations, and relieve appellee of any and all

liability upon the same; that, in addition to the payment of such sums of money, said Benjamin D. Pettit also agreed to insure to appellee the undisturbed and quiet possession of all of such lands for at least three years from said 13th day of September, 1876, and that he would supply appellee with 600 head of yearling steer cattle to be grazed and matured on such lands, and on other lands then in appellee's control, and that, at the end of such three years, the said Pettit was to reconvey to appellee, upon the payment of such sum of $21,081, with the interest, all the lands described in such deed.

And appellee averred, that said Benjamin D. Pettit violated all the terms and conditions upon which such conveyance was made, in all of their essential particulars; that instead of paying off the sums of money he agreed and covenanted with appellee to pay off, he suffered judgment to be taken against appellee and execution to issue for the possession of such lands soon after he took such deed, and a long time prior to the time when appellee, under his covenant, was to yield up the possession of such lands; that said Pettit became an active participant in such suit for possession of such lands, by the employment of able counsel to prosecute the same against appellee; that instead of protecting appellee in the peace and quiet of his former possession, he proceeded to and did covenant with Alice L. and David Elliott, and Keltie and John McCoy, who were the legal heirs of one John Richey, the holders at that date of a certain mortgage against such lands, amounting then to the sum of $14,000, which sum is one of the several sums assumed by said Pettit to pay immediately upon his taking of such deed for said lands; which sum and indebtedness said Pettit did not pay, but fraudulently sought to obtain title to all of such lands, and avoid the solemn covenants under which he obtained his deed from appellee and wife, by procuring or permitting the sales of such lands under a decree of foreclosure and a certificate of purchase from the sheriff of such county to issue to said El-

liotts and McCoys for all of such lands, and, at the same time, contracting and colluding with them, said Elliotts and Mc-Coys, and one Wilstach, to possess him, said Pettit, of such lands, and thereby evade the terms and conditions under which he took title to such lands from appellee and wife.

Appellee further averred, that, in pursuance of such fraudulent collusion upon the part of said Pettit, he, appellee, had been dispossessed of all of such lands, and that said Pettit's legal representatives then held such possession; that no money or other consideration had been paid appellee for such described lands then held by said Pettit's estate; that there was then due appellee from such estate, as damages from the breach of said Pettit's contract, the sum of $25,000, and for the unpaid purchase-money of such lands the further sum of $25,891, with legal interest thereon. Wherefore, etc.

After the court below had sustained appellant's motion to strike out a certain portion of the second paragraph of appellee's claim, there was no substantial difference between this paragraph and the third paragraph of such claim or complaint. The material facts averred in the second and third paragraphs of appellee's claim are, that on September 13th, 1876, appellee was the owner of 511½ acres of land, particularly described, in White county, which lands he and his wife, on the day last named, conveyed by their warranty deed to Benjamin D. Pettit, then in full life but since deceased; that on the same day, in consideration of the execution to him of such conveyance to him, said Pettit executed to appellee a written contract, of which the following is a copy:

"BROOKSTON, Sept. 13th, 1876.

" I hereby assume and agree to pay the sum of twenty-one thousand and eighty-one dollars, as follows, to wit: The sum of fourteen thousand dollars to the heirs of John Richey, deceased; thirty-seven hundred and seventy-five dollars to the Second National Bank of Lafayette, Indiana; fifteen hundred and six dollars to the Lafayette Savings Bank; and

eighteen hundred dollars to George Chamberlain. Should Cormacan Hays pay me the above amounts, with the interest thereon at the rate of ten per cent. per annum, within three years from this date, or cause the same to be paid, then I bind myself, my heirs and administrators, to make the said Cormacan Hays a good and sufficient deed to a certain tract of real estate, contained in a deed of said Hays to Benjamin D. Pettit, dated August 1st, 1876.

(Signed)    " B. D. Pettit."

It was further alleged, that the sums mentioned in such written contract were debts of appellee; that the sum to be paid the heirs of John Richey was secured by a mortgage; that the residue of such debts were evidenced by promissory notes signed by appellee, with said Pettit as security thereon; that as a further consideration for such deed by appellee and wife, and as an inducement to appellee to execute such deed and accept such written contract, said Pettit verbally agreed with appellee that he should continue to occupy and have the use and enjoyment of the lands so conveyed for the full term of three years from September 1st, 1876, and that within a reasonable time thereafter he, said Pettit, would furnish to appellee five hundred yearling steers, to be kept by him three years on the lands so conveyed, and other lands then under appellee's control; that appellee should have the absolute control of such lands and such steers, during said three years, and that appellee should mortgage said steers as fast as furnished to secure the repayment of the money expended by said Pettit in their purchase, with interest at the rate of ten per cent. per annum, at the expiration of such three years; and that whatever should be realized upon the sale of said steers when matured and sold, over the amount of their purchase-money and such interest, should be the money of appellee, as a compensation for his care and management of such lands, etc.

Appellee further averred, that said Pettit allowed such lands to be sold on a decree of foreclosure of the Richey

mortgage, and to be purchased at sheriff's sale, pursuant to
such decree, by Alice L. Elliott and Keltie McCoy, within
less than six months after such lands were conveyed to said
Pettit; that said Pettit procured a conveyance of such lands
on said sale to be made to John A. Wilstach, in trust for
said Elliott and McCoy, and caused said Wilstach by suit to
dispossess appellee of such lands, within eighteen months of
the time they were so conveyed to said Pettit; that appellee
was deprived of the use and enjoyment of such lands, and
was at great expense in the payment of costs and attorneys'
fees, in making his defence of such possession; that said
Pettit did not furnish said five hundred yearling steers to
appellee; and that by reason of said Pettit's failure to furnish
said steers, and to secure to appellee possession of such lands,
he had been damaged, etc.

It is apparent from the foregoing summary of the second
and third paragraphs of the claim or complaint herein, that
the appellee has counted in each of such paragraphs exclu-
sively upon the verbal contract of Benjamin D. Pettit, and
has sought therein to recover damages for Pettit's alleged
breach of such verbal contract. Under the averments of
these paragraphs of complaint, the warranty deed of appel-
lee to Pettit, and the written contract given by Pettit to
appellee, were both executed on the same day; each was the
consideration for the execution of the other; they both con-
stituted parts of one and the same transaction, and together
they formed one and the same contract. In this contract,
all oral negotiations and verbal agreements, precedent or
concurrent, by or between the parties in relation to the sub-
ject-matter of such contract, were completely merged; and
the two parts of such contract, appellee's deed and the writ-
ing executed by Pettit in consideration of such deed, became
and were the exclusive evidence of the only covenants and
agreements, of or concerning the subject-matter of such con-
tract, by which the respective parties ultimately bound them-
selves. This, we think, is the law of this State, in relation

to the matter we are now considering.   *Ice* v. *Ball,* 102 Ind.
42; *Brown* v. *Russell & Co.,* 105 Ind. 46; *Singer Manfg.
Co.* v. *Forsyth,* 108 Ind. 334.

In the case last cited, the court said: "The rule that a
formal written contract, which appears to be complete, will
be presumed to be the repository of the final intentions of
the parties, in regard to the subject-matter of the agreement,
and that it excludes proof of any prior or contemporaneous
parol stipulations which would contradict the writing, is
abundantly settled, and should not, on account of its im-
portance, be relaxed in any degree.   *   *   *   Obligations
which parties have deliberately entered into, and put in
writing, can not therefore be pared down, taken away or
enlarged by parol evidence."

In the case under consideration, the parties to the contract
finally agreed upon, Benjamin D. Pettit as well as Cormacan
Hays, each for himself reduced to writing and subscribed
the covenants and agreements whereunto he ultimately bound
himself, as his part of their mutual contract.   In the second
and third paragraphs of his claim or complaint, after stating
that Pettit's written contract of assumption was the consid-
eration for his deed, appellee alleged that as a further con-
sideration for such deed, and as an inducement to appellee's
execution of such deed and his acceptance of Pettit's written
contract, said Pettit verbally agreed with appellee that he
should occupy, use and enjoy the lands so conveyed, for the
full term of three years from September 1st, 1876, and that
he, Pettit, would furnish to appellee five hundred yearling
steers, etc.   This verbal agreement is the foundation of ap-
pellee's cause of action herein, and under our decisions it
must be held, we think, that this verbal contract was so far
merged in the written instruments, executed by the parties,
as to render it inoperative, of no binding obligation, and
incapable of enforcement in law or in equity.

It is claimed, however, by appellee's counsel, that the
alleged verbal contract of Pettit is collateral to, independent

of, and entirely consistent with the written contract of the parties, as evidenced by appellee's deed and Pettit's written contract of assumption; and, in support of their position, counsel refer us to and rely upon *Welz* v. *Rhodius,* 87 Ind. 1 (44 Am. R. 747), and the authorities there cited. This claim of counsel is manifestly inconsistent, and directly at variance, with the averments of the second and third paragraphs of appellee's claim or complaint. In each of these paragraphs, it was alleged, as we have seen, that Pettit's verbal contract was made as a further consideration for, and as an inducement to, the execution of appellee's deed. These averments being true, it can not be correctly said that such verbal contract was, in any legal sense, collateral to appellee's deed or Pettit's written contract of assumption, which together constituted their written contract. It is well settled by our decisions, that such a contract can not be controlled, diminished or enlarged by any precedent or contemporaneous verbal agreement by or between the parties, in relation to the subject-matter of the written contract. *McDonald* v. *Elfes,* 61 Ind. 279, and cases cited; *Walterhouse* v. *Garrard,* 70 Ind. 400; *Clodfelter* v. *Hulett,* 72 Ind. 137.

We are of opinion, for the reasons given, that the court below erred in overruling appellant's demurrers to the second and third paragraphs of appellee's claim or complaint.

It will be seen from our statement of the substance of the first paragraph of complaint, that it was not averred in such paragraph, that the agreement of Benjamin D. Pettit therein declared upon, or any part thereof, was in writing. In the absence of such an averment, it must be assumed that the entire agreement of Pettit, declared upon in such first paragraph, was the oral or verbal agreement of Pettit, and that no part thereof was in writing. This is settled by our decisions. *Langford* v. *Freeman,* 60 Ind. 46; *Goodrich* v. *Johnson,* 66 Ind. 258; *Ice* v. *Ball, supra.*

The entire agreement of Pettit, as stated in the first paragraph of complaint, rested in parol, and, therefore, what we

have said, in considering the sufficiency of the second and third paragraphs, can have no application to such first paragraph. Appellant's learned counsel have failed to point out any valid objection, and we can not see any such objection, to the sufficiency of the first paragraph of complaint, and, therefore, we hold that the demurrer to this first paragraph was correctly overruled.

After appellant's demurrers to each paragraph of appellee's claim or complaint were overruled by the court, issue was joined by appellant's answer in general denial. The cause was tried by the court, and a finding was made for appellee, the claimant or plaintiff below, and, over appellant's motion for a new trial, the court rendered judgment on its finding. It is fairly shown by the record of this cause, that the finding and judgment of the trial court can only be rested upon the second and third paragraphs of the claim or complaint herein. Certainly, we can not say from the record that the finding and judgment herein were made and rendered wholly and exclusively upon the first paragraph of such claim or complaint. But, as we have seen, the second and third paragraphs, which are clearly bad, were held good below upon appellant's demurrers thereto, and the rulings on such demurrers were assigned here as errors. In such a case, it is settled by our decisions, that the judgment below must be reversed. *Evansville, etc., Co.* v. *Wildman,* 63 Ind. 370; *Pennsylvania Co.* v. *Holderman,* 69 Ind. 18; *Ethel* v. *Batchelder,* 90 Ind. 520; *City of Logansport* v. *LaRose,* 99 Ind. 117.

The judgment is reversed, with costs, and the cause is remanded, with instructions to sustain the demurrers to the second and third paragraphs of the claim or complaint, and for further proceedings not inconsistent with this opinion.

Filed Mar. 19, 1887; petition for a rehearing overruled May 25, 1887.